# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 9, 2002 Session

## JET PRINTING, LLC
### v.
## DEEP SOUTH WHOLESALE PAPER COMPANY, INC.

**Appeal from the Chancery Court for Davidson County**
**No. 00-356-II     Carol McCoy, Chancellor**

---

**No. M2001-02582-COA-R3-CV - Filed January 23, 2003**

---

This is a breach of contract case.  A bag manufacturer ordered printed polyethylene film from a printing company, to be made into bags to sell to chicken packaging companies.  The film was treated on both sides.  Consequently, the bag manufacturer was unable to properly seal the bags. Later shipments of film that were not treated on both sides sealed properly.  The bag manufacturer refused to pay for the initial shipment of film that would not seal, so the seller printing company sued for breach of contract.  The trial court found for the bag manufacturer, holding that the seller breached both an implied term of the contract and an implied warranty of fitness for a particular purpose.  On appeal, the seller printing company argues that the trial court erred in finding that the film did not conform to the contract and that the seller breached the implied warranty of fitness for a particular purpose, and that the trial court erred in excluding the testimony of the seller's proffered expert.  We affirm, finding that the trial court did not err in finding that the seller breached an implied warranty for a particular purpose, nor in excluding the testimony of the seller's expert witness.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Wayne L. Robbins, Jr. and Mary Taylor Gallagher, Nashville, Tennessee, for appellant, Jet Printing, LLC.

James C. Edwards, Madison, Tennessee, for appellee, Deep South Wholesale Paper Company, Inc.

**OPINION**

Plaintiff/Appellant Jet Printing, LLC ("Jet Printing") prints pre-manufactured polyethylene film. Defendant/Appellee Deep South Wholesale Paper Company, Inc. ("Deep South") makes the polyethylene film into bags for resale. Deep South's representative contacted Jet Printing to discuss purchasing polyethylene film from Jet Printing. The parties discussed the potential order, in telephone conversations, over the course of approximately one week. During these conversations, Jet Printing was made aware that Deep South planned to use the film to manufacture bags to be sold to a chicken packaging company. There was no discussion of chemical treatment of the film. At the conclusion of these discussions, Deep South placed a verbal order for polyethylene film. The verbal order was followed by a written purchase order the next day. Jet Printing sent Deep South film that was "corona" treated[1] on both sides. Because the film was treated on both sides, Deep South was unable to satisfactorily seal the bags on its sealing machines. After Deep South complained to Jet Printing, Jet Printing used the film that was treated on both sides and was able to seal the bags on Jet Printing's sealing machines. After Deep South's complaint, however, subsequent orders of polyethylene film shipped from Jet Printing to Deep South were "strip" treated, which removes a portion of the "corona" treatment where the bag is to be sealed. This polyethylene film was also treated with an additional chemical to increase elasticity in the film. The strip treated film was used to make bags that sealed to Deep South's satisfaction.

Deep South refused to pay Jet Printing for the polyethylene film that was "corona" treated on both sides. In response, Jet Printing sued Deep South for breach of contract. Deep South's answer to the complaint argued, inter alia, that Jet Printing provided Deep South with non-conforming goods that breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

A bench trial was held on July 23, 2001. At the trial, testimony indicated that Deep South initially contacted Jet Printing on the recommendation of a third party. The evidence showed that Jet Printing knew that Deep South was ordering the printed polyethylene film in order to make sealable bags for resale. The testimony also showed that, based on Deep South's verbal order, Jet Printing purchased the film from its supplier before receiving Deep South's written purchase order. Prior to shipment of the polyethylene film, neither of the parties discussed whether the film should be chemically treated. Likewise, the written purchase order did not mention chemical treatment of the film.

Deep South's representative testified that, because he was not in the printing business, he did not direct Jet Printing to treat or not treat the film. Rather, he relied on Jet Printing's expertise to know whether to treat, or strip treat, a particular portion of the polyethylene film. Jet Printing's representative stated that Jet Printing had been in business only two months when Deep South placed its order. Jet Printing's representative acknowledged, however, that it was Jet Printing's

---

[1]"Corona" treated polyethylene film is coated with a chemical agent that helps the printed material better adhere to the film.

responsibility to advise clients with regard to what they should order, and to determine how the order should be filled. Jet Printing proffered the testimony of an expert witness, a salesperson, to testify about inherent assumptions a salesperson in the pre-manufactured film industry would make when reading a purchaser's order. The trial court refused to admit this testimony, reasoning that the interpretation of the written purchase order was a legal conclusion and that the trial court did not need the assistance of an "expert" in reading purchase orders. The trial court permitted Jet Printing to make an offer of proof on the expert's testimony.

Later in the trial, Deep South proffered the testimony of an expert witness, Steven Leuman ("Leuman"), who had over twenty years of experience in making polyethylene film bags. The trial court permitted Leuman to testify. He testified that, after receiving the initial shipment of polyethylene film from Jet Printing, he made multiple unsuccessful attempts to make the film seal consistently. To rebut Leuman's testimony, Jet Printing's representative testified that Jet Printing could properly seal the bags on its own sealing equipment. Moreover, Jet Printing's representative testified that Jet Printing sold a small portion of the allegedly defective polyethylene film to another customer and had received no complaints about whether the film could be sealed.

At the conclusion of the testimony, the trial court issued oral findings of fact. At the outset the trial judge stated that, because Jet Printing ordered the polyethylene film from its supplier prior to receiving Deep South's purchase order, the court would look at the understanding between Jet Printing and Deep South before the written purchase order was sent. The trial court found that it was apparent from the testimony, and was therefore implied in the parties' agreement, that Jet Printing knew that the film was for bags that would seal. The trial judge gave credence to Leuman's testimony, that he could not get the bags to seal properly, and specifically discredited the testimony of Jet Printing's representative that the bags sealed on Jet Printing's machines. The trial court found that because Leuman could not make the bags properly seal, Jet Printing failed to comply with the implied warranty for a particular purpose. The trial court's subsequent written order stated that Jet Printing breached an implied term of the contract because the bags would not seal, and that Jet Printing breached the implied warranty of fitness for a particular purpose as set forth in section 47-2-315 of the Tennessee Code Annotated. Accordingly, the trial court ordered that Jet Printing's breach of contract claims against Deep South be dismissed, and assessed costs against Jet Printing. From this order, Jet Printing now appeals.

On appeal, Jet Printing argues that the trial court erred in finding that Jet Printing breached the implied warranty of fitness for a particular purpose because Jet Printing did not know that Deep South was relying on it to determine the appropriate chemical treatment for the film, if any, Deep South did not rely on Jet Printing's skill or judgment to determine film treatment, and because the goods were not defective and were fit for the particular purpose for which they were sold. Jet Printing argues that the trial court should have confined itself to the four corners of the written purchase order and should not have found any implied terms in the written purchase order, and maintains that the goods properly conformed to the terms of the written purchase order. In the alternative, Jet Printing asserts that, even if the trial court properly found an implied term in the written purchase order that the bags would seal, Jet Printing did not breach that term. Finally, Jet

Printing asserts that the trial court erroneously excluded the testimony of its expert witness because the trial judge would have benefitted from the specialized knowledge of the expert, and that the trial court erroneously permitted Deep South's expert to testify regarding industry standards while not allowing Jet Printing's expert to testify as to the same standards.

In response, Deep South argues that the trial court did not err in finding an implied warranty of fitness for a particular purpose because Jet Printing admitted that its customers should rely on it to provide the correct product, and because Deep South relied on Jet Printing to provide the correct product. Deep South also notes that the purchase order did not address the treatment of the film, and therefore, the trial court was justified in looking at the surrounding circumstances, including previous conversations between the parties, in making its finding that there was an implied term in the contract that the film would make bags that would seal. As to the expert testimony, Deep South argues that the trial court did not err in refusing to permit the testimony of Jet Printing's expert witness because Jet Printing's witness was proffered as an expert in reading purchase orders, and the trial court stated that it did not need assistance in reading purchase orders.

Because this case was heard by a trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court below, unless the evidence preponderates against the decision of the trial court. *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). Questions of law, however, are reviewed *de novo* without a presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001) (citation omitted). The interpretation of a contract is a matter of law; thus, no presumption of correctness accompanies the trial court's interpretation of the contract. *Leon Williams Gen. Contractor v. Hyatt*, No. E2001-00434-COA-R3-CV, 2002 Tenn. App. LEXIS 112, at *5 (Tenn. Ct. App. Feb. 7, 2002) (citing *NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Corp.*, 968 S.W.2d 791 (Tenn. Ct. App. 1997)). With regard to admissibility of expert witnesses, we review the trial court's decision under an abuse of discretion standard. *State v. Reid*, No. M1999-00803-SC-DDT-DD, 2002 Tenn. LEXIS 550, at *127 (Tenn. Nov. 26, 2002) (citing *State v. Anderson*, 880 S.W.2d 720, 728 (Tenn. Crim. App. 1994)). Absent an abuse of discretion, the trial court's determination will stand. *Id.* A trial court abuses its discretion when it reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard. *Eldridge v. Eldridge*, 72 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Regarding witness credibility, the Tennessee Supreme court has stated:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not

re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

***Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999) (citations omitted). Thus, the credibility determinations of the trial court will be upheld on appeal unless there is clear and convincing evidence to the contrary.

Jet Printing argues first that the trial court erred in finding, pursuant to section 47-2-315 of the Tennessee Code Annotated, an implied warranty that Jet Printing would ship Deep South polyethylene film that would seal to Deep South's satisfaction on Deep South's sealing machines. The statute states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose. . . .

Tenn. Code Ann. § 47-2-315 (2001). Thus, to establish an implied warranty of fitness for a particular purpose, the buyer must prove that: (1) the seller knew that the buyer had a particular purpose for which the goods were required; (2) the seller knew that the buyer was relying on the seller's skill or judgment to provide the buyer with goods fit for that particular purpose; and (3) the buyer must have actually relied on the seller's skill or judgment. ***See Kopper Glo Fuel, Inc. v. Island Lake Coal Co.***, 436 F. Supp. 91, 95 (E.D. Tenn. 1977) (citing ***Sylvia Coal Co. v. Mercury Coal & Coke Co.***, 156 S.E.2d 1, 16-17 (W. Va. 1967)). "Whether or not [an implied warranty of fitness for a particular purpose] arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting. . . ." Tenn. Code Ann. § 47-2-315 cmt.1. Once an implied warranty of fitness for a particular purpose has been established, the buyer must then show that the goods were not fit for the purpose for which they were intended. ***Masters v. Rishton***, 863 S.W.2d 702, 706 (Tenn. Ct. App. 1992) (citation omitted). In this case, Jet Printing asserts that it did not know that Deep South was relying on Jet Printing to determine chemical treatment, if any, for the polyethylene film, that Deep South in fact did not rely on Jet Printing's skill or judgment regarding those specifications, and finally, even if it did, that the polyethylene film supplied to Deep South was not defective and was fit for the particular purpose for which it was sold.

The trial court below focused on the understanding of the parties prior to the issuance of the written purchase order. It found that the discussions between the parties' representatives did not indicate whether the polyethylene film was to be treated; however, the testimony of the representatives showed clearly that both parties understood that the bags, when assembled, would seal to meet Deep South's requirements. Indeed, at the trial, Jet Printing's representative acknowledged that he was aware that Deep South intended to convert the polyethylene film into bags that would contain chicken parts to be sent to China. Clearly the evidence established that Jet Printing had reason to know of Deep South's intended use for the polyethylene film.

The second element required to find an implied warranty of fitness for a particular purpose is whether the buyer relied on the seller's skill or judgment to supply goods fit for the buyer's purpose. *See* Tenn. Code Ann. § 47-2-315. The buyer need not show that the seller had actual knowledge of the buyer's reliance, only that the seller had "reason to realize . . . that the reliance exists." Tenn. Code Ann. § 47-2-315 cmt.1. In this case, the trial judge found that Deep South requested polyethylene film that would seal. Neither party indicated how the polyethylene film was to be treated; the trial court concluded that Jet Printing was expected to use its judgment to determine which type of film would make a proper seal. Further, Jet Printing's representative acknowledged at trial that he believed that it was his responsibility to advise clients regarding what product they should order, and that customers should rely on him to order the correct product for the customer's purposes. Moreover, the evidence at trial showed that the treatment of the film was not for Deep South's benefit, but rather for Jet Printing's benefit, as the corona treatment helps the ink adhere to the polyethylene film. Deep South's representative testified that he did not specify which treatment, if any, to use because he is not in the business of printing on polyethylene film. Clearly the evidence was sufficient to support the trial court's determination that Jet Printing had reason to know that Deep South was relying on it to provide polyethylene film that would properly seal.

Jet Printing next argues that Deep South could not have actually relied on Jet Printing to choose the correct product for Deep South because a buyer who is knowledgeable and capable of choosing goods cannot rely on a seller's skills to choose the correct product. Jet Printing cites *Kopper Glo Fuel, Inc. v. Island Lake Coal Co.*, 436 F. Supp. 91 (E.D. Tenn. 1977), in support of this assertion. In *Kopper Glo*, the buyer purchased coal from a coal brokering business. After having received shipments of coal, the purchaser refused to pay. The seller sued for the purchase price, and the purchaser counterclaimed, arguing that the coal was of inferior quality and contending, inter alia, that the seller breached an implied warranty of fitness for a particular purpose. The District Court for the Eastern District of Tennessee, interpreting Tennessee law, noted that, in order to establish an implied warranty for a particular purpose, the buyer must actually rely on the seller's skill or judgment. In *Kopper Glo*, the buyer had a degree in chemical engineering as well as a medical degree, and was provided with laboratory results from chemical analyses of the coal product in order to evaluate the quality of Kopper Glo's coal reserves. *Id.* at 94. The buyer "personally inspected Kopper Glo's coal and was quite capable of making his own independent judgment of whether Kopper Glo's reserves would be of sufficient quality to meet Island Lake's needs." *Id.* at 95. Under these circumstances, the district court concluded that the buyer's expertise and inspection of the coal prior to purchase prevented the buyer from claiming that he relied on the seller's skill or knowledge in deciding to purchase the seller's product. Therefore, no implied warranty was created. *See id.* at 95.

In contrast, in the case at bar, Deep South did not have an opportunity to inspect the polyethylene film prior to purchasing it. Moreover, in *Kopper Glo*, the seller was required only to ship the best coal it had available. In this case, Jet Printing was to ship polyethylene film that would seal to Deep South's satisfaction. Deep South's representative testified unequivocally that he relied on Jet Printing to order the correct polyethylene film needed to properly produce the bags. In light of this, the evidence supports the trial court's factual finding on the last element, that Deep South

in fact relied on Jet Printing's skill and judgment in choosing the appropriate treatment for the polyethylene film in order to meet Deep South's needs. Therefore, we affirm the trial court's finding of an implied warranty for a particular purpose.

In the alternative, Jet Printing argues that, even if there was an implied warranty of fitness for a particular purpose, the trial court erred in finding that the warranty was breached. Jet Printing relies on the testimony of its representative that Jet Printing was able to successfully seal bags on its machines using the corona-treated film initially shipped to Deep South, and that a portion of the corona-treated film was sold by Jet Printing to another purchaser, with no complaint.

In order to establish a breach of the implied warranty of fitness for a particular purpose, Deep South was required to prove that the polyethylene film was either defective or not fit for the particular purpose for which it was sold. *See Masters v. Rishton*, 863 S.W.2d 702, 706 (Tenn. Ct. App. 1992) (citation omitted). At the trial, Deep South's expert witness, Leuman, with over twenty years' experience using polyethylene film to make bags, testified that he made numerous attempts to seal bags using film from Jet Printing's initial shipment, to no avail. The trial court expressly credited Leuman's testimony. In contrast, the trial court specifically discredited the testimony of Jet Printing's representative, noting that if anyone could have made the bags seal properly, it would have been Leuman. Absent clear and convincing evidence to the contrary, credibility determinations made by the trial court will be upheld on appeal. *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d at 783. Considering all of these circumstances, and giving appropriate deference to the trial court's determinations of credibility, the trial court's finding that the implied warranty for a particular purpose was breached is affirmed.

Jet Printing argues that the trial court abused its discretion in excluding the testimony of Jet Printing's proffered expert, Buzz Payne ("Payne"). Jet Printing equates Payne's testimony to the testimony of Deep South's expert, Leuman, and argues that the trial court erred in permitting Leuman to testify with regard to the industry standards of strip treating polyethylene film while refusing to permit Payne to testify regarding the same industry standards. Jet Printing notes that Payne was prepared to testify that the industry standard is that customers who want strip treating on their polyethylene film must specify that treatment, and that a contract for polyethylene film would not have strip treatment as an implied term.

As noted above, the trial court's inclusion or exclusion of the testimony of an expert witness is reviewed under an abuse of discretion standard. Section 702 of the Tennessee Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. § 702. Thus, the testimony of a witness with specialized knowledge may be permitted if the specialized knowledge will substantially assist the court in understanding the evidence or a fact in issue. Moreover, "the subject under examination must be one that requires that the court and jury have the aid of knowledge or experience such as men not specially skilled do not have, and such therefore as cannot be obtained from ordinary witnesses." *State v. Shuck*, 953 S.W.2d 662, 668 (Tenn. 1997) (quoting *Casone v. State*, 246 S.W.2d 22, 26 (Tenn. 1952)). In this case, Jet Printing proffered Payne, a salesperson, as an expert in reading purchase orders. The trial court determined that it did not need assistance in reading or understanding purchase orders, stating:

> . . . experts are to be of assistance to [t]he [c]ourt, and reading purchase orders[,] that basically is going to be a legal conclusion that I will draw from whatever facts are tendered to me. I don't think that there is such a thing [as] an expert in reading purchase orders. If this was very, very complicated, if there was something that was beyond the keen of [t]he [c]ourt to understand, then experts certainly are of assistance.

In contrast, Leuman's experience was in converting polyethylene film into bags. He testified to the industry standards as to the types of polyethylene film that will make a proper seal, asserting that it was generally known in the industry that film treated on both sides will not properly seal. The trial court found his testimony to be of substantial assistance. Under these circumstances, we find that the trial court did not abuse its discretion in refusing to admit into evidence the testimony of Jet Printing's proffered expert.

The above determinations pretermit any other issues raised on appeal.

The decision of the trial court is affirmed. Costs are taxed to appellant, Jet Printing, LLC, and its surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE